**Deborah D. PETERSON, Personal Representative of the Estate of James C. Knipple (Dec.), et al., Plaintiffs,**

v.

**ISLAMIC REPUBLIC OF IRAN, et al., Defendants.**

**Civil Action Nos. 01–2094(RCL), 01–2684(RCL).**

United States District Court, District of Columbia.

July 7, 2008.

Allen Louis Rothenberg, Philadelphia, PA, Anthony J. Laspada, Tampa, FL, David J. Cook, Cook Collection Attorneys, San Francisco, CA, Ferris Ridgely Bond, Bond & Norman, Gaithersburg, MD, Jane Carol Norman, Bond & Norman, PLLC, Kay M. Clarke, Clower & Clarke, Steven R. Perles, Perles Law Firm, P.C., Thomas Fortune Fay, Tuna Mecit, Law Offices of Fay & Perles, Washington, DC, Joseph Peter Drennan, Alexandria, VA, Robert Peter Feeney, Gaithersburg, MD, for Plaintiffs.

## *MEMORANDUM OPINION*

ROYCE C. LAMBERTH, Chief Judge.

This matter comes before the Court on various post-judgment motions including: motions [273, 297, and 306] by the Japan Bank for International Cooperation ("JBIC"), the Bank of Japan ("BOJ"), and the Export Import Bank of Korea ("KEX-IM") to quash writs of attachment on judgment, and plaintiffs' motion [286] for appointment of a receiver. Upon consideration of the motions, the oppositions and replies thereto, the applicable law, and the entire record herein, this Court finds that the garnishees' motions to quash should be GRANTED, and plaintiffs' motion for appointment of a receiver should be DENIED.

## I.  BACKGROUND

These actions arise from the October 23, 1983 bombing of a United States Marine Corps barracks in Beirut, Lebanon, in which 241 American servicemen operating under peacetime rules of engagement were murdered by a suicide bomber. Plaintiffs alleged that the Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security were liable for damages from the attack because they provided material support and assistance to Hezbollah, the terrorist organization that orchestrated and carried out the bombing. Plaintiffs relied upon the state-sponsored terrorism exception to jurisdictional immunity of the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1605(a)(7).[1] On March 17–18, 2003, this Court conducted a bench trial to determine the defendants' liability for their part in the perpetration of this attack. After reviewing the evidence presented by plaintiffs at trial, including testimony from lay and expert witnesses, this Court issued an opinion finding that the defendants were legally responsible for providing material financial and logistical support to help carry out this tragic attack on the 241 servicemen in Beirut in 1983. *Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46, 61 (D.D.C.2003). On September 7, 2007, 515 F.Supp.2d 25, this Court entered a default judgment in favor of plaintiffs and against defendants in the total amount of $2,656,944,877.

Plaintiffs now seek to levy execution and collect on that judgment. Plaintiffs directed post-judgment, third-party subpoenas to individuals, corporations, international organizations, and financial institutions that may have information regarding Iranian assets that could be used to satisfy plaintiffs' judgment. JBIC, BOJ, and KEXIM were among the financial institutions served with the subpoenas. All three institutions now move to quash the writs of attachment on sovereign immunity grounds. Plaintiffs move this Court to enter an order appointing a receiver to direct specified foreign and international garnishees to pay funds to satisfy the judgment. Plaintiffs assert that the garnishees' immunity claims would become moot if this Court ruled in plaintiffs' favor on the motion to appoint a receiver.[2] JBIC and KEXIM, along with the World Bank and the International Finance Corporation ("IFC"), oppose plaintiffs' motion to appoint a receiver arguing that a receivership cannot overcome sovereign immunity. As it is this Court's opinion that the motions to quash and the receivership mo-

1. Since the complaint was filed, 28 U.S.C. § 1605(a)(7) was replaced by 28 U.S.C. § 1605A. *See* Defense Authorization Act for Fiscal Year 2008, Pub.L. No. 110–181, Div. A, § 1083(b)(1)(A)(iii), 122 Stat. 341, 338–44 (2008).

2. Plaintiffs have filed two motions urging this Court to defer its rulings on the pending motions to quash until a decision is reached on the motion for appointment of a receiver. (*See* Pls.' Mot. to Defer and Continue Pending Mots. to Quash [Docket Entry # 341] and Pls.' Mot. for Expedited Hearing for Appointment of Receiver and Mot. to Defer and Continue Hearing on Mots. to Quash [Docket Entry # 345].) Controlling law, however, requires this Court to decide the predicate issues of jurisdiction and sovereign immunity at its earliest opportunity. *See Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 39 (D.C.Cir.2000) ("In order to preserve the full scope of [sovereign] immunity, the district court must make the critical preliminary determination of its own jurisdiction as early in the litigation as possible." (internal quotations omitted)). Indeed, "to defer the question is to frustrate the significance and benefit of entitlement to immunity from suit." *Id.* (internal quotations omitted). Thus, plaintiffs' motions [341] and [345] seeking a deferral of this Court's ruling on the pending motions to quash the writs of attachment will be denied in a separate order.

tion both rest on whether the garnishees are properly entitled to sovereign immunity, the Court will begin with that issue.

## II. DISCUSSION

### A. Sovereign Immunity as a Basis to Quash the Writs of Attachment

█ The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Saudi Arabia v. Nelson,* 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (internal quotations omitted). Under the FSIA, a foreign state is immune from the jurisdiction of American courts unless the case falls within a statutory exception. 28 U.S.C. § 1604; *see id.* §§ 1605–1607. If no exception applies, the district court lacks subject matter jurisdiction. *Id.* § 1604; *see also Foremost–McKesson, Inc., et al. v. Islamic Republic of Iran,* 905 F.2d 438, 443 (D.C.Cir.1990) (where no exception applies, FSIA provides "immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits"). If an exception does apply, the district court has jurisdiction. *Id.* § 1330(a); *see Kilburn v. Socialist People's Libyan Arab Jamahiriya,* 376 F.3d 1123, 1126 (D.C.Cir.2004).

█ It is the defendant's burden to prove that a plaintiff's allegations do not fall within the bounds of an FSIA exception. *Mwani v. bin Laden,* 417 F.3d 1, 15 (D.C.Cir.2005) (citing *Kilburn,* 376 F.3d at 1131). "If the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations, then the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the [FSIA] exceptions to immunity invoked by the plaintiff." *Id.* "But if the defendant challenges the factual basis of the court's jurisdiction, ... the court must go beyond the

pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling." *Kilburn,* 376 F.3d at 1127 (internal quotations omitted).

As a preliminary matter, this Court shall first address plaintiffs' contention that the garnishees' assertion of sovereign immunity is misplaced since plaintiffs seek only to levy upon assets of Iran rather than upon JBIC itself. Plaintiffs' logic defies controlling authority and the language of the FSIA. As this Court explained in *Flatow v. Islamic Republic of Iran,* 74 F.Supp.2d 18, 20 (D.D.C.1999), attachment of funds possessed by a sovereign constitutes a suit against that state, which is barred by the doctrine of sovereign immunity. Indeed, principles of sovereign immunity apply with equal force to attachments and garnishments. *Id.* at 21 (citations omitted). Further, if the garnishees enjoy sovereign immunity, then under the FSIA they are therefore immune from *any* "jurisdiction of the courts of the United States." 28 U.S.C. § 1604. The primary issue for this Court to resolve, therefore, is whether each of the garnishees is immune from this Court's jurisdiction under the FSIA.

### 1. JBIC's Entitlement to Sovereign Immunity

In April 2008, plaintiffs directed third-party subpoenas to JBIC's Washington, D.C. and New York City offices inquiring about any information that JBIC may have regarding assets of Iran and other named defendants. JBIC objected to the subpoenas by letter asserting sovereign immunity. Plaintiffs subsequently directed the U.S. Marshal to serve JBIC with a writ of attachment seeking to garnish any credits, accounts, or debts JBIC may hold for any of the defendants. JBIC moves to quash the writ on grounds that it is immune from the jurisdiction of this Court.

JBIC maintains that as an "agency or instrumentality" of the Japanese government, it possesses sovereign immunity both under international law and the laws of the United States. An agency or instrumentality of a foreign state is considered a foreign state for FSIA purposes, 28 U.S.C. § 1603(a), and is therefore "immune from the jurisdiction of the courts of the United States." 28 U.S.C. § 1604. To qualify as an agency or instrumentality of a foreign state, an entity must be: (1) "a separate legal person, corporate or otherwise;" (2) "an organ of a foreign state;" and (3) "neither a citizen of a State of the United States ... nor created under the laws of any third country." 28 U.S.C. § 1603(b). According to JBIC, it was established by Japanese statute in 1999 to consolidate the Japanese government's foreign trade and development aid efforts and policies. (*See* JBIC's Mem. Supp. Mot. Quash 1.) JBIC further represents that its capital is wholly owned by the Japanese government and that JBIC is under the direct control of the Japanese Minister of Finance and the Japanese Minister of Foreign Affairs. (*See id.*) Given the foregoing, this Court has no doubt, and plaintiff does not dispute, that JBIC is an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b).[3] Accordingly, this Court must grant JBIC's motion to quash, unless plaintiffs can identify a specific statutory exception to JBIC's immunity.

Plaintiffs claim that JBIC is deprived of immunity under the FSIA's commercial activity exception. That exception provides that a foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case:

> [I]n which the action is based upon a commercial activity carried on in the United States by the foreign state; or [U]pon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or
>
> [U]pon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Specifically, plaintiffs rely on JBIC's participation in a bond offering on the New York Stock Exchange in 2007 to support their assertion that the commercial activity exception applies. Plaintiffs further claim that they "can demonstrate, e.g. that JBIC, with offices in Washington, D.C. and New York, might well be engaging in a whole host of other financial transactions." (Pls.' Opp'n 4.)

■ JBIC challenges plaintiffs' jurisdictional allegations both on legal and factual grounds. (*See* JBIC's Reply Br. 3.) JBIC contends that the alleged commercial activity that plaintiffs reference lacks any nexus whatsoever to plaintiffs' substantive claim. As JBIC correctly asserts, the jurisdictional nexus requirement of the FSIA mandates not only that commercial acts be tied to the United States, but that they form the basis of the plaintiff's causes of action. *See Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146 (D.C.Cir. 1994) (holding that alleged commercial activity must form the basis for plaintiff's suit in order to trigger the commercial activity exception to sovereign immunity). JBIC argues that even if this Court accepted plaintiffs' factual allegations as true, the alleged commercial activities have absolutely no connection with the events underlying plaintiffs' claims against Iran.

---

**3.** *See* Pls.' Mem. Supp. Mot. for Appointment of Receiver, [Docket entry # 286], at 7 (stating that JBIC, KEXIM, and the Export–Import Bank of India "are all presumably agencies or instrumentalities of their respective sovereigns").

Indeed, plaintiffs have made no assertion that the alleged commercial activities are connected in any way to their substantive claims. More importantly, the 1983 terrorist attack took place twenty-four years before the bond offering and sixteen years before JBIC existed. Under these circumstances, this Court must reject plaintiffs' argument for a commercial activity exception to JBIC's sovereign immunity and JBIC's motion to quash the writ of attachment should be granted.[4]

### a. Plaintiffs' Request for Jurisdictional Discovery as to JBIC's Sovereign Immunity

Plaintiffs claim that having alleged jurisdiction under the commercial activity exception of the FSIA, they are entitled to pursue discovery to support their allegations. (*See* Pls.' Opp'n 4–6.) This Court recognizes that "a tension exists between 'permitting discovery to substantiate exceptions to statutory foreign sovereign immunity and protecting a sovereign's or sovereign agency's legitimate claim to immunity from discovery.'" *Crist v. Republic of Turkey*, 995 F.Supp. 5, 12 (D.D.C.1998) (Lamberth, J.) (quoting *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir.1992)). However, "jurisdictional discovery should not be ordered when to do so 'would frustrate the significance and benefit of entitlement to immunity from suit.'" *Id.* (quoting *El–Fadl v. Central Bank of Jordan*, 75 F.3d 668, 671 (D.C.Cir.1996) (citation and internal quotations omitted)). Rather, "jurisdictional discovery should be permitted only if it is possible that the plaintiff could demonstrate the requisite jurisdictional facts sufficient to constitute a basis for jurisdiction and it should not be allowed when discovery would be futile." *Id.* (citation and internal quotations omitted). "Requests for jurisdictional discovery should be granted only if the plaintiff presents nonconclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA." *Id.* (internal quotations and citations omitted). Here, any discovery would be futile since there are no set of facts that could be produced that would lead this Court to a different jurisdictional conclusion. As explained above, the FSIA requires a nexus between the alleged commercial activity and the substantive claim. There is clearly no such nexus where the events giving rise to plaintiffs' claim occurred more than a decade before JBIC's creation and have no connection whatsoever to any of the alleged commercial activity. There is no amount of discovery that will change these facts. Accordingly, plaintiff's request for jurisdictional discovery must be denied.

### 2. Bank of Japan's Entitlement to Sovereign Immunity

In April 2008, plaintiffs directed a third-party subpoena to BOJ's Washington, D.C.

---

**4.** Plaintiffs further claim that JBIC's property is subject to attachment pursuant to section 1610 of the FSIA. (*See* Pls.' Opp'n 3–4.) Pursuant to section 1610(b)(2), attachment of property in the United States of an agency or instrumentality of a foreign state engaged in commercial activity in the United States is permitted where the judgment relates to a claim for which the agency or instrumentality *is not immune by virtue of specific exceptions to immunity*. Here, this Court has already determined that no statutory exception to JBIC's immunity applies since the alleged commercial activity has no nexus to the underlying cause of action. Plaintiffs' reliance on section 1610(d) is also without merit. Under that section, property of a foreign state used for commercial activity in the United States is not immune from attachment if the foreign state has explicitly waived its immunity from attachment prior to judgment. In the instant case, JBIC has made no such explicit waiver. Accordingly, there is no basis for this Court to allow plaintiffs to proceed against JBIC under section 1610.

office in an attempt to identify any information that BOJ may have regarding the defendants' assets. BOJ objected to the subpoena citing procedural defects and asserting sovereign immunity. Plaintiffs subsequently served BOJ with a writ of attachment. BOJ filed its motion to quash the writ asserting sovereign immunity and asking to be excused from further involvement in this action.

█ BOJ claims that it is an "agency or instrumentality" under the FSIA. BOJ represents that it was established in 1882 as Japan's central bank. (*See* BOJ's Mem. Supp. Mot. Quash 1.) BOJ is currently organized and governed by the Bank of Japan Act ("BOJ Act"), which provides that BOJ shall serve as "the central bank of Japan" and shall conduct business only as directed by the BOJ Act. (*See id.*) In addition, BOJ is predominantly funded by the Japanese government. (*See id.* at 2.) Under these facts, BOJ is plainly an "agency or instrumentality of a foreign state" as defined under 28 U.S.C. § 1603(b). BOJ is therefore entitled to immunity from plaintiffs' efforts to garnish defendants' assets in this action, unless plaintiffs can show that a specific statutory exception to immunity is applicable. Plaintiffs, in opposing BOJ's motion, do not dispute its assertion of sovereign immunity, nor do they raise any argument that a statutory exception to BOJ's immunity applies.[5] Since plaintiffs have failed to cite any statutory exception that deprives BOJ of its sovereign immunity, BOJ's motion to quash must be granted.

### 3. KEXIM's Entitlement to Sovereign Immunity

Plaintiffs directed a writ of attachment on judgment to KEXIM's Washington, D.C. office in May 2008. KEXIM moves to quash the writ and to be excused from any further involvement in this action as a foreign sovereign exempt from the jurisdiction of this Court.

█ KEXIM was created in 1976 by the Korean government to facilitate export and import transactions, overseas investments, and overseas resource development. (KEXIM's Mem. Supp. Mot. Quash 2–3.) According to KEXIM, it is the official export credit agency of the Korean government providing export credit and guarantee programs to support Korean enterprises in conducting overseas business. (*Id.* at 2.) The majority of KEXIM's shares are directly owned by the Korean government. (*Id.* at 5.) Based upon these facts, this Court is satisfied that KEXIM is an "agency or instrumentality of a foreign state" as defined by the FSIA. Accordingly, like JBIC and BOJ, KEXIM is entitled to sovereign immunity unless plaintiffs demonstrate that one of the statutory exceptions to immunity apply. Plaintiffs have made no such showing. Plaintiffs'

---

5. Rather, plaintiffs argue that BOJ, in filing its motion to quash, seeks an premature adjudication of a jurisdictional defense. (*See* Pls.' Opp'n to BOJ's Mot. to Quash 4.) Specifically, plaintiffs argue that BOJ has not met the requirements of Rule 65 of the Federal Rules of Civil Procedure, that the controversy regarding whether BOJ should be excused from this action is not yet "ripe," and that this Court should defer ruling on BOJ's motion to quash until after it has ruled on the receiver motion. Essentially, plaintiffs maintain that BOJ's sovereign immunity need not be determined unless and until the receivers take enforcement action against BOJ. (*See id.* at 6.) This Court finds each of plaintiffs' arguments wholly without merit. Given BOJ's assertion that it is entitled to sovereign immunity, this Court sees no basis to delay its jurisdictional determination. Indeed, if BOJ is immune under FSIA, this Court is wholly without jurisdiction with regard to BOJ and the writ must be quashed. This Court will address the jurisdictional impact of a court-appointed receiver in Part II.B, *infra*.

opposition brief raises no challenge to KEXIM's status as an agency or instrumentality of a foreign state or to the application of any specified statutory exception to immunity.[6] As such, KEXIM's motion to quash the writ should be granted.

## B. Sovereign Immunity of the Garnishees Subject to Receivership

Having determined that JBIC, BOJ, and KEXIM are entitled to sovereign immunity in this action, this Court shall now turn to plaintiffs' motion to appoint a receiver. Plaintiffs move this Court to appoint a receiver for purposes of collection, recovery, and sequestering of all funds held by the following banks: JBIC, the World Bank, the International Finance Corporation ("IFC"), the International Monetary Fund ("IMF"), KEXIM, and the Export–Import Bank of India (collectively, the "garnishee banks"). The motion has been opposed by JBIC, KEXIM, the IFC, and the World Bank.[7] To resolve plaintiffs' motion, this Court shall first briefly address the sovereign immunity issues raised in response to the motion.

As to the foreign banks—JBIC, KEXIM, and the Export–Import Bank of India—this Court has already determined that as agencies or instrumentalities of foreign states, JBIC and KEXIM are entitled to sovereign immunity and that no statutory exception applies. As to the third foreign bank, the Export–Import Bank of India, plaintiffs concede in their motion to appoint a receiver that JBIC,

KEXIM, and the Export–Import Bank of India "are all presumably agencies or instrumentalities of their respective sovereigns." (Pls.' Mem. Supp. Mot. for Appointment of Receiver, [Docket entry # 286], at 7.) Based on plaintiffs' own concession, along with plaintiffs' failure to identify any specific statutory exception that deprives the Export–Import Bank of India of sovereign immunity, this Court shall treat that bank's sovereign immunity as conceded for the purposes of determining plaintiffs' motion to appoint a receiver.

■ As to the international financial institutions—the World Bank, the IFC, and the IMF—all three correctly assert immunity from this Court's jurisdiction in garnishment proceedings relating to this action. The FSIA prohibits attachment or any other judicial process impeding the disbursement of development funds from any organization designated by the President as immune under the International Organizations Immunities Act ("IOIA"). *See* 28 U.S.C. § 1611(a). The IOIA provides that

> [i]nternational organizations, their property and their assets, wherever located, and by whomsoever held, shall enjoy the same immunity from suit and *every form of judicial process* as is enjoyed by foreign governments, except to the extent that such organizations may expressly waive their immunity for the purpose of any proceedings or by the terms of any contract.

6. Instead, plaintiffs raise identical arguments as those raised in its opposition to BOJ's motion to quash. *This Court shall reject those arguments for the same reasons it did so as to BOJ. See supra*, n. 5.

7. The International Monetary Fund filed its answer to the writ of attachment on judgment on May 9, 2008. (*See* Answer [Docket entry # 269].) *The answer includes a letter dated May 1, 2008, from the IMF's Assistant Gener-*

al Counsel asserting its immunity under its Articles of Agreement and under the International Organizations Immunities Act, Pub. L. No. 79–291, 59 Stat. 669 (1945). The Export–Import Bank of India filed an answer to the writ of attachment on judgment on June 9, 2008. (*See* Answer [Docket entry # 318].) The answer provides no response to plaintiffs' interrogatories.

22 U.S.C. § 288a(b) (emphasis added). It is well settled in this circuit that the immunity afforded international organizations under the IOIA extends to all lawsuits and claims, including garnishment proceedings. *See Atkinson v. Inter–American Dev. Bank,* 156 F.3d 1335, 1339 (D.C.Cir.1998) (explaining that the plain language of the IOIA refutes the notion of an exception for garnishment proceedings). There are only two sources of limitation to the immunity: (1) the organization itself may expressly waive its immunity; and (2) the President may specifically limit the organization's immunities when he selects the organization as one entitled to enjoy the IOIA's privileges and immunities. *See Mendaro v. World Bank,* 717 F.2d 610, 613 (D.C.Cir. 1983). All three of the international financial institutions identified in plaintiffs' motion to appoint a receiver are "international organizations" entitled to immunity from the judicial process under the IOIA.[8] Notably, plaintiffs do not challenge whether the World Bank, the IFC, and the IMF are properly entitled to sovereign immunity or whether any of the organizations have waived immunity.[9] Instead, plaintiffs argue that sovereign immunity serves no bar to the appointment of a receiver since a receiver would merely "step into the shoes of Iran." For the reasons that follow, this Court disagrees and rejects plaintiffs' request to appoint a receiver as to any of the named garnishees.

### 1. Plaintiffs' Motion to Appoint a Receiver

The appointment of a receiver is an equitable remedy of rather drastic nature available at the discretion of the court having jurisdiction of the subject matter and the parties. *Mintzer v. Arthur L. Wright & Co.,* 263 F.2d 823, 824 (3d Cir. 1959); *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2983 (2d ed. 2008) ("[T]he appointment of a receiver is not a matter of positive right but rather lies in the discretion of the court."). Jurisdiction is a prerequisite to the appointment of a receiver and therefore any receivership ordered by a court that lacks subject matter jurisdiction is void. *See* Wright, Miller & Marcus, *supra,* § 2985 ("When the federal court is without jurisdiction of the action, the receivership necessarily is improper; the appointment of the receiver is a nullity and the receiver has no power to act."); *see also Connecticut Hous. Fin. Auth. v. Eno Farms Ltd. P'ship,* Civ. No. 3:07cv319, 2007 WL 1670130, *5 (D.Conn. June 6, 2007) (rejecting the argument that "the court did not require subject matter jurisdiction over the parties before it could appoint a temporary receiver" because "[w]ithout jurisdiction, the court has no power over the parties, and thus the lack of subject matter jurisdiction would have rendered a receivership order void" (internal citation omitted)); *Fahey v. Calverley,* 208 F.2d 197, 200 (9th Cir.1953) (holding that where a district court is "without jurisdiction, the receivership must necessarily fall"). Having already determined that this Court lacks jurisdiction over the garnishee banks, any receiver appointed by this Court would lack power to act since a receiver's powers cannot exceed those of the Court itself.

---

**8.** *See* Exec. Order No. 9751, 11 Fed. Reg. 7713 (1946) (designating the World Bank and the IMF as public international organizations entitled to enjoy the privileges, exemptions, and immunities of the IOIA); Exec. Order No. 10680, 21 Fed. Reg. 7647 (1956) (same as to the IFC).

**9.** Indeed, plaintiffs concede that each of these organizations enjoy sovereign immunity. (*See id.* at 8 (recognizing that the international banks all have "partial sovereign immunity").)

Plaintiffs argue that a receiver would "stand in the shoes of Iran" and order the garnishee banks to draw down funds owed to Iran in order to satisfy the judgment. According to plaintiffs' theory, sovereign immunity would be wholly unavailable as a defense to any claim brought by Iran. Otherwise stated, faced with the garnishee banks' assertion of sovereign immunity, plaintiffs seek to use a receiver to do *indirectly* what they cannot do *directly*.[10] As this Court has already discussed at length, the FSIA flatly prohibits attachment and execution against property held by foreign states and international organizations. The FSIA makes no exception for attachment sought by a receiver. To be sure, plaintiffs have failed to cite a single decision holding that a United States court has jurisdiction over an action brought by a court-appointed receiver to pursue collection against a foreign sovereign entitled to immunity.[11] Even with a receiver "standing in the shoes of Iran," this Court would still lack jurisdiction over any action by a party acting on behalf of Iran against the garnishee banks to collect funds created out of financial transactions that have no nexus to the United States. For all of these reasons, this Court finds that appointment of a receiver to collect assets held by the foreign financial institutions and international organizations involved in the instant motions would be both improper and futile.

### III. CONCLUSION

As it is this Court's conclusion that it lacks jurisdiction over the garnishee banks in this action, the motions to quash shall be GRANTED. For the same reasons, plaintiffs' motion to appoint a receiver shall be DENIED.

A separate order shall issue this date.

SO ORDERED.

---

**10.** Plaintiffs argue that receivers acting on behalf Iran, "and standing in the shoes of Iran, can instruct the levied banks to turn over funds in their possession to plaintiffs, leaving to the result that issue of purported sovereign immunity would be mooted." (*See* Mot. for Appointment of Receiver 5.)

**11.** The cases plaintiffs rely upon regarding involuntary assignment of claims against a the United States are wholly inapposite to the matter presented here. (*See* Pls.' Reply Br. [Docket Entry # 335] at 11–13 (citing *Price v. Forrest*, 173 U.S. 410, 424–25, 19 S.Ct. 434, 43 L.Ed. 749 (1899); *Danielson v. United States*, 416 F.2d 408, 410 (9th Cir.1969); *Quarles Petroleum Co. Inc. v. United States*, 213 Ct.Cl. 15, 551 F.2d 1201, 1206–07 (1977); *New York Guardian Mortgagee Corp. v. Cleland*, 473 F.Supp. 422, 433–34 (S.D.N.Y. 1979); *Ozanic v. United States*, 83 F.Supp. 4, 6 (S.D.N.Y.1949); *New Rawson Corp. v. United States*, 55 F.Supp. 291, 293 (D.Mass. 1943).)) None of those cases dealt with the present issue—whether a court may appoint a receiver to collect assets from a foreign sovereign where the court itself lacks jurisdiction over the sovereign.